IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL FITE                                                              PLAINTIFF

v.                              CIVIL NO. 05-5158

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                            DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Michael Fite brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for period of disability and disability insurance benefits (DIB) under the provision of Title II of the Social Security Act (Act).

**Procedural Background:**

The application for DIB presently before this court was filed on June 20, 2000, alleging an inability to work since November 20, 1999,[1] due to scoliosis, degenerative disc disease, hypertension and knee pain. (Tr. 51-54). An administrative hearing was held on November 7, 2001. (Tr.223-268). Plaintiff was present and represented by counsel.

By written decision dated December 13, 2001, the ALJ found that plaintiff has an impairment or combination of impairments that are severe. (Tr. 22). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the

---

[1] At the administrative hearing before an ALJ on November 7, 2001, plaintiff amended his alleged onset date to August 1, 2001. (Tr. 228).

level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 22). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 23). The ALJ, with the use of the Medical-Vocational Guidelines (Grids), found plaintiff was not disabled. (Tr. 23).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on July 30, 2005. (Tr. 4-6). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file an appeal brief; however, only defendant chose to do so. (Doc. # 7). This case is before the undersigned for report and recommendation.

**Evidence Presented:**

At the administrative hearing on November 7, 2001, plaintiff was forty-five years of age. (Tr. 239). Plaintiff amended his alleged onset date from November 20, 1999, to August 1, 2001. (Tr. 228). Since August of 2001, plaintiff testified he has performed part-time work with the Park Patrol. (Tr. 229, 234-235). Prior to August of 2001, plaintiff testified he was a full time tow truck driver for a wrecking company from January to August of 2001. (Tr. 230-232). Plaintiff testified he stopped working for the wrecking company because of back pain. (Tr. 232).

When asked why he was unable to perform full-time substantial gainful employment, plaintiff testified he is unable to work due to scoliosis, lower lumbar back pain and knee pain. (Tr. 235-236). Plaintiff testified he experiences pain from the base of his skull all along his spine with radiating pain mainly into his left leg. (Tr. 238). At the time of the hearing, plaintiff rated

2

his back pain as an eight on a ten point scale. (Tr. 242). Plaintiff further testified the only medication he took was Aspirin. (Tr. 242).

After performing his part-time job, plaintiff testified he goes home and tries to find a way to relieve his pain. (Tr. 239). Plaintiff testified he is able to perform both indoor and outdoor household chores but has to complete them at his own pace. (Tr. 239, 245). Plaintiff testified he does not participate in any social activities. Plaintiff explained that his pain also keeps him from sleeping at night. (Tr. 244).

With regard to physical activities, plaintiff testified his doctors placed a ten pound weight restriction on him in 1998, or 1999, but he continued to lift fifty to one hundred pounds while working for the wrecking company. (Tr, 257). At the time of the hearing, plaintiff indicated he could barely lift his own body and at most would be able to lift twenty pounds. (Tr. 258).

Mr. Michael Wiseman, a vocational expert, testified plaintiff's past relevant work consists of work as a park guard which is considered semi-skilled, light work; a tow truck driver which is considered semi-skilled, heavy work; a customer service agent which is considered skilled, light to heavy work; and a psychiatric aide which is considered semi-skilled, light to medium work. (Tr. 259-260). Mr. Wiseman testified plaintiff's transferable skills consisted of reading and writing reports, dealing with the general public, and operating office equipment. (Tr. 261-262).

After listening to the ALJ's hypothetical question (Tr. 262), Mr. Wiseman testified the hypothetical individual would be able to perform his past relevant work as a park patrolman and other work as a motel clerk, a companion, a telephone solicitor, and a telephone answering operator. (Tr. 263-264). If the weight limitation was reduced to ten pounds with postural

3

limitations, Mr. Wiseman testified the hypothetical individual would be able to perform the above mentioned jobs. (Tr. 265). If plaintiff was found to be fully credible, Mr. Wiseman testified there would be no jobs available for the hypothetical individual. (Tr. 268).

The only medical evidence dated during the relevant time period consists of a MRI of the thoracolumbar spine revealing s-shaped scoliosis and degenerative changes of the lumbar spine. (Tr. 192).

The record also includes medical evidence dated in 1998 through 1999, revealing plaintiff's complaints of back pain which was first reported after an on-the-job injury. (Tr. 127, 131-134, 193-216). In October of 1998, Dr. C.M. Kendrick recommended plaintiff not lift more than ten pounds and that he refrain from repetitive lifting for three months. (Tr. 205). After continued complaints of pain, in December of 1998, Dr. Kendrick recommended plaintiff refrain from lifting and that he was to sit for only two hours at a time. (Tr. 200). In May of 1999, Dr. D. Luke Knox recommended plaintiff not lift over ten pounds and that he frequently change his position. (Tr. 129). The evidence reveals plaintiff underwent physical therapy in 1999. (Tr. 136-172).

On September 13, 2000, Dr. Stanley Applegate, a consultative physician, conducted a general physical examination of plaintiff. (Tr. 173-179). Dr. Applegate found that plaintiff had a full range of motion of his cervical spine, a decreased range of motion of his lumbar spine and left lower-paravertebral muscle spasms. Dr. Applegate further determined that plaintiff had a full range of motion of his shoulders, elbows, wrists, hands, knees and ankles, and a slightly decreased range of motion on internal and external rotation of his hips. (Tr. 175-176). Dr. Applegate found that plaintiff had normal reflexes, no muscle weakness or atrophy, no sensory

abnormalities and a normal gait and coordination. (Tr. 176-177). Dr. Applegate indicated that plaintiff could stand and walk without assistive devices, walk on his heels and toes, squat and arise from a squatting position, hold a pen and write, touch his fingertips to his palms, grip with normal strength and oppose his thumbs to his fingers. (Tr. 177). Dr. Applegate diagnosed plaintiff with degenerative disc disease, pressure on branch of sciatic nerve and borderline hypertension. (Tr. 178).

On October 10, 2000, plaintiff sought treatment for knee pain in the joint area of both knees. (Tr. 189). Mr. Robert B. Davis, NP, noted x-rays revealed decreased joint space in the right knee and an MRI revealed DJD of the spine. Plaintiff was instructed to use a knee brace. (Tr. 190).

In a letter dated October 18, 2000, Mr. Davis, addressed the results of a physical examination and x-ray study of plaintiff's right knee. (Tr. 180). Mr. Davis noted plaintiff's complaints of increasing pain and immobility in his right knee and lower back. Mr. Davis stated that a physical examination revealed crepitus and ligamental snap in the area of the lateral collateral ligament. Mr. Davis further stated that Dr. Doran B. Ben-Avi reviewed an x-ray of the knee and found minimal narrowing of the joint space of the right knee. Mr. Davis recommended plaintiff seek care from an orthopedist.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

5

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

6

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

7

Plaintiff alleges disabling back pain due to scoliosis and degenerative disc disease of the lumbar spine and disbaling knee pain. The medical evidence reveals plaintiff sought little treatment during the relevant time period. In fact, the only medical evidence during the relevant time period consists of a MRI of the thoracolumbar spine revealing s-shaped scoliosis and degenerative changes of the lumbar spine. While the record does show plaintiff has back impairments, his failure to pursue on-going and consistent treatment weighs against his allegations of disabling back pain. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). With regard to his knee pain, plaintiff did seek treatment for knee pain in October of 2000. It was recommended that plaintiff seek treatment from an orthopedist but the record fails to reveal plaintiff sought or attempted to seek such treatment. *See Guilliam v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)(failure to follow a recommended course of treatment weighs against credibility).

With regard to plaintiff's alleged hypertension there is no evidence of record revealing plaintiff has sought on-going and consistent treatment for this alleged impairment. . *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent w/allegations of pain).

The record further reveals plaintiff does not take any prescription medication for his alleged disabling pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain). Plaintiff testified that all of his prescriptions for pain medication had expired and that he only took Aspirin for his pain. (Tr. 242).

8

Plaintiff's reports concerning his daily activities are also inconsistent with his claim of disability. At the administrative hearing, plaintiff testified that he was able to perform routine tasks such as getting dressed, cleaning the kitchen, taking out the trash, and mowing the lawn. (Tr. 239, 245, 249). Plaitniff further testified that he was barely able to carry himself but thought he could lift twenty pounds. (Tr. 258). In contrast to his testimony at the administrative hearing regarding his lifting abilities, plaintiff in a November 7, 2001,[2] Statement of Current Physical Abilities form, indicated that he was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, and that he could push and pull eighty pounds occasionally and twenty pounds frequently. (Tr. 116). Plaintiff further indicated that he could walk for thirty minutes at a time and for an hour and a half in an eight-hour workday; that he could stand for thirty minutes at a time and three hours in an eight-hour workday; and that he could sit for ninety minutes at a time and for four hours in an eight-hour workday. (Tr. 116). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving- were inconsistent with claim of total disability). Furthermore, while not at the level of substantial gainful activity, the record reveals plaintiff is able to work part-time as a patrolman for the Park Patrol.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not

---

[2] The court notes this was also the date of the administrative hearing.

9

established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

AO72A
(Rev. 8/82)

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a full range of light work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating physicians, and the evaluation of a consultative examiner. In making this RFC determination, the ALJ noted that in 1998, Dr. Kendrick recommended plaintiff not lift more than ten pounds, that he refrain from repetitive lifting and that he was to sit for only two hours at a time. (Tr. 200, 205). The ALJ also noted that in May of 1999, Dr. Knox recommended plaintiff not lift over ten pounds and that he frequently change his position. (Tr. 129). However, the ALJ pointed out that the evidence of record clearly establishes plaintiff is able to perform the requirements of light work activity. The ALJ noted plaitniff's testimony that he worked for a wrecking company lifting and carrying up to seventy-five pounds from January to August of 2001. (Tr. 230, 232). Plaintiff even indicated in November of 2001, that he was able to perform light work activities. (Tr. 116). We find the ALJ properly considered and declined to give controlling weight to plaintiff's treating physicians opinions. *Dixon v. Barnhart*, 353 F.3d 602, 606 (8th Cir. 2003) (medical opinions of a treating physician are normally accorded substantial weight, but they must not be inconsistent with other evidence on the record as a whole). Therefore, based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination.

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. If an ALJ finds, and the record supports the finding, that a claimant can perform the full range of activities in a work category, the ALJ may refer to the Grids found in 20 C.F.R. Part 404, Subpart P, Appendix 2 in making the ultimate

11

conclusion of disability or non-disability. *See Harris v. Shalala*, 45 F.3d 1190, 1194 (8th Cir. 1995). Given our finding that substantial evidence supports the ALJ's determination that plaintiff is capable of the full range of light work, we believe the ALJ properly relied on the Grids, eliminating the need for expert vocational testimony, in concluding that given plaintiff's age, education, work experience, and capacity for light work, plaintiff was not disabled.

**Conclusion:**

Based on the foregoing, we recommend, affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of August 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

12

AO72A
(Rev. 8/82)